JAMES B. NIXON

*v.*

JAMES HENRY HASLETT et ux.

[Decided October 17th, 1908.]

1. A mortgagor is estopped, in a foreclosure suit by the mortgagee's assignee, to claim a rescission on the ground of the mortgagee's fraud, where at the time of the assignment he declared in writing that he had no claim, set-off, &c., against the mortgagee.

2. Oral as well as written statements by a mortgagor that he has no defences or set-off against the mortgage will estop him to assert one against the mortgagee's assignee.

3. Payment by a mortgagor of interest and his promise to pay the principal after assignment of the mortgage and after he discovered fraud by the mortgagee in obtaining the mortgage would not estop the mortgagor to assert such fraud, since the assignment was made without consideration passing from the assignee to him, and since the payment and promise referred to the original debt, but such conduct warrants an inference that the mortgagor's attempt to rescind the mortgage results solely from an attempt to defeat foreclosure.

4. If, on a mortgagee's assignee's suit to foreclose, the mortgage should be rescinded for the mortgagee's fraud, the assignee would be entitled to a sale of the land as the mortgagee's land to reimburse him for the price of the assignment.

5. In a foreclosure suit by a mortgagee's assignee, no decree could be had against the mortgagee on the ground of his fraud, where he was not before the court, and no cross-bill had been filed.

6. The question of the sufficiency of a mortgagee's misrepresentations as ground for rescinding as to the mortgagor can be tried in a suit by his assignee to foreclose, on an application for the surplus money, if any be raised by a sale of the land or by other appropriate action.

*Mr. Horace F. Nixon,* for the complainant.

*Mr. Marlin V. Bergen, Jr.,* for the defendants.

WALKER, V. C.

This is a foreclosure suit. The bill charges that on July 28th, 1906, the defendant Haslett was indebted to Oliver Bright in the sum of $5,500 and gave his bond and mortgage (his wife joining him in the mortgage) to Bright on two tracts of land in the borough of Holly Beach, Cape May county, to secure the sum mentioned; that the mortgage was duly acknowledged and afterwards on August 1st, 1906, was recorded; that afterwards and on January 27th, 1907, Bright assigned the bond and mortgage to the complainant Nixon; that the whole amount secured by the mortgage, with interest from July 28th, 1907, remains due, whereby, &c.

The defendants answered, admitting the execution of the bond and mortgage, and setting up that Bright on July 10th, 1906, and for many years previous, had represented the defendant Haslett, and in several real estate transactions in Holly Beach acting as his confidential adviser; that at the time of the purchase by Haslett from Bright of the property in question (July 10th, 1906) and immediately before that time, as a means to arrive at the value thereof, Bright informed Haslett that one of the properties was rented for $350 a year and the other for $500 a year; that based principally on these statements, Haslett arrived at an estimate of the value of the premises at $11,000; that subsequently Haslett ascertained that the premises were not rented at those amounts, but at the following amounts, one for $250 and the other for $350; that Haslett paid to Bright the purchase price of $11,000, as follows: $5,500 in cash and a purchase-money mortgage for $5,500 (the mortgage being foreclosed); that the property was not worth $11,000 at the time of the purchase (actually made July 28th, 1906), and the mortgage was obtained by fraudulent representations of facts relied upon by Haslett, which led him to overestimate the value of the property.

The answer then proceeds to assert that the defendants deny that the complainant is a *bona fide* purchaser of the mortgage

for value, and that he had full knowledge of the transaction, and is the holder of the mortgage for Bright and is foreclosing it for him.

A replication was filed and on the hearing of the cause the defendants, Haslett and wife, presented a petition for leave to file a cross-bill, and by consent the petition was filed, and leave to file a cross-bill was given. The hearing then proceeded as though the cross-bill were filed. The cross-bill has not yet been filed, and if it were, its prayer would doubtless follow the last averment in the petition, which is that the defendants desire to rescind, revoke and set aside the contract of sale on the ground of the fraudulent representations mentioned, and they assert that such a rescission would set aside the bond and mortgage and would require Bright to refund to Haslett the moneys paid by him to Bright as the consideration of the properties, Bright to be made a party.

The facts developed upon the hearing show conclusively that the complainant is a purchaser of the mortgage for value. In this posture of the case I confess that I do not understand exactly what position the defendants would place the complainant with reference to the mortgage security. Neither by pleading nor by argument have they informed the court on this score.

The bill prayed for an answer without oath, and the answer, very properly, is not sworn to. The petition for leave to file a cross-bill, avers that the petitioners are informed and believe that the complainant was fully informed of the fraud which had been practiced on them at the time of accepting the assignment, and that he did not purchase the mortgage for any consideration passing from him but is the holder of the same for Bright. This petition is sworn to, and, by consent, was treated as the testimony of the defendant on the subject.

On this question of fraud so far as the complainant, the assignee of the mortgage is concerned, we have the defendant Haslett testifying that he is informed and believes that the complainant was cognizant of it, without stating the source of his information, while the complainant testified that he paid $5,500 for the mortgage and took from Haslett, the owner of the equity of redemption and mortgagor, a declaration that he had no off-

set against the mortgage debt, which paper was in his hands before he paid the money for the mortgage; that he did not personally examine into the value of the property nor have any consultation with Mr. Bright upon the subject, but became satisfied that the property was worth the amount of the mortgage by accepting the word of Mr. Horace F. Nixon, his solicitor. Mr. Horace F. Nixon was sworn as a witness and said that at the time Bright applied to him to sell the mortgage he represented to him that the properties were rented at $350 and $500, respectively; that he went to examine the property and found out that the rents were $250 and $300, and also $150 for still another building on the premises. This was before the loan was made, and, notwithstanding the properties were not rented for as high a figure as Bright said they were, he was satisfied with the security and took the mortgage. Besides testifying that he invested $5,500 in the mortgage the complainant· put in evidence the check of his solicitor (for that amount less the solicitor's charges for searches, &c.), which went to Bright.

It is admitted that the property is not worth the $11,000, the price at which Haslett bought it from Bright, but that it is worth about $8,000, and that the sale went through on the basis that the rent be paid a year in advance, and that Haslett did not discover the true amount of rents until the spring of 1907, which was after the assignment of the mortgage to the complainant.

In *Magie* v. *Reynolds, 51 N. J. Eq. (6 Dick.) 113,* a mortgage was procured to be given by fraud and without any consideration. It was assigned for a consideration, and upon foreclosure under a cross-bill by the mortgagors and owners of the equity of redemption to have it canceled, Vice-Chancellor Pitney held that the complainant's bill should be dismissed as to them, and that they were entitled to have the bond and mortgage delivered up to be canceled. This upon the ground that the assignee of a mortgage takes the same subject to all defences which the mortgagor had to the debt which the mortgage was given to secure. He held, however, that it is the duty of a person about to take the assignment of a bond and mortgage to inquire of the obligor and mortgagor as to his liability thereon. It will be remembered that this inquiry was made in the case at bar, and

that the defendant and mortgagor gave to the complainant a declaration in writing that he had no charge, claim, demand, plea or set-off upon, for or against the mortgage in any way or manner, the declaration commencing with the recital that the very mortgage in question was about to be assigned from the holder to the assignee, who is the complainant, and notice of which assignment had been received by the mortgagor who made the declaration. To allow the defendant's claim in the face of his solemn declaration in writing would be to overthrow the whole doctrine of estoppel with reference to the assignment of mortgages made after inquiry of the mortgagor or person owning the equity of redemption as to whether the mortgage is due so that the intending purchaser can safely take an assignment of it as a valid and existing security.

In *Woodruff* v. *Morris Institute for Savings, 34 N. J. Eq. (7 Stew.) 174,* Vice-Chancellor Van Fleet held: "Where one person, by either words or conduct, induces another to believe that he may safely purchase certain property, or take a certain security, and, subsequently, relying on such representations, acquires the property or security, the former will never be permitted, in a court of equity, to overthrow the title so acquired."

In *Magie* v. *Reynolds, ubi supra,* Vice-Chancellor Pitney (*6 Dick. 116*) remarked that Chancellor Vroom in *Shannon* v. *Marselis, 1 N. J. Eq. (Sax.) 413* (at *p. 424*), examined the authorities in England and New York and quoted with approbation the language of Chancellor Kent in which he stated that it is the duty of the assignee to make inquiries of the obligor or mortgagor or person owning the equity of redemption before taking an assignment of a bond and mortgage. He cites also *Matthew* v. *Wallwyn, 4 Ves. 118,* in which Lord-Chancellor Loughborough observed (at *p. 127*) : "Persons most conversant in conveyancing hold it extremely unfit and very rash, and a very indifferent security, to take an assignment of a mortgage without the privity of the mortgagor as to the sum really due; that in fact it does happen that assignments of mortgages are taken without calling upon the mortgagor; * * * but no conveyancer of established practice would recommend it as a good title to take an

assignment of a mortgage without making the mortgagor a party, and being satisfied that the money was really due."

It appears that this estoppel will arise not only where a certificate in writing that there are no defences or set-offs against the mortgage is given, but even where oral statements are made to that effect. *20 Am. & Eng. Encycl. L. (2d ed.) 1042.*

It is true that the investigation made by the complainant's solicitor when he was inquiring into the title and value of the property disclosed the fact that the rentals were $750 instead of $850 per annum. But that did not necessarily show that the property was worth less than the defendant gave for it. The complainant, as prospective assignee of the mortgage, was not so much interested in the rental value as in the intrinsic value of the property. The solicitor satisfied himself that the property was well worth an investment of $5,500 on a mortgage, and so reported to his principal. Then to make sure of the availability of the security he procured from the mortgagor and owner of the equity of redemption a solemn declaration in writing under seal, that the whole amount for which the mortgage was given was still due and owing and that he had no defence whatever against the payment of the moneys secured by the mortgage. More than this, the defendant Haslett paid the complainant an installment of interest on the mortgage in July, 1907, which was six months after the complainant had purchased the mortgage on the strength of his declaration of no set-off. Further, on September 10th, 1907, the defendant wrote the complainant's solicitor as follows: "In reference to paying that $1,000 on account of mortgage, am not able as yet to do so." Later, and on October 19th, 1907, he wrote again to the solicitor as follows:

"In reply to your letter of the 18th would say, I expected to have been able to take up the whole mortgage before this and feel confident that I shall do so very soon. Trusting you will show me some leniency in the matter, I remain," &c.

These letters refer to the mortgage under foreclosure.

The defendants set up that it was not until late in the spring of 1907 that they learned of the fraud that had been practiced on them. It will be remembered that they purchased the prop-

erty July 10th, and took title July 28th, 1906, and gave the declaration of no set-off January 21st, 1907. The installment of interest was paid to the complainant two or three months after the discovery of the fraud, and the letters excusing payment of principal were written some time after that. Of course, the payment of interest and the promise to pay the principal after the discovery of fraud would not work an estoppel, for the assignment had been made without any consideration passing from the complainant to the defendant Haslett, and the payment and promises had reference to the original debt, but, the conduct of Haslett in paying the interest, and promising, as it appears, to pay to the complainant part, if not the whole, of the principal, are circumstances from which it is inferable that the attempt to rescind the contract and throw the property back on Bright and secure a return of the consideration actually paid him, is borne solely of an attempt to defeat the foreclosure of the mortgage. Anyhow, in this posture of the affair, the complainant would still be entitled to have a decree for the sale of the property to satisfy his mortgage out of the land, as against Bright, if not as against Haslett. A somewhat similar situation arose in *Magie* v. *Reynolds, ubi supra.* In that case the mortgage was given by Reynolds and wife to one Sumner, who assigned it to one Bloss, and Bloss assigned it to the complainant. As already stated, it was ascertained that the mortgage in its inception was without consideration. The complainant made the fatal mistake of not inquiring of the mortgagor and obligor as to whether or not the mortgage was a valid and subsisting security and what was due upon it, and it was held that the defendants as against the complainant were entitled to a dismissal of the bill and to have the bond and mortgage delivered up for cancellation. Not so with reference to the defendant Bloss, who in his assignment to the complainant covenanted and agreed to guarantee the payment of the bond and mortgage. The complainant was allowed to amend the bill by inserting a prayer for payment by Bloss, and a decree for payment by him was made.

Now, surely, if it were to be decreed that the transaction was fraudulent and should be rescinded and Haslett and Bright restored to their former status, the decree would be, further, that

the mortgaged premises be sold as the property of Bright to raise and pay the money due to the complainant, for Bright, having received the mortgage from Haslett, and having sold it to Nixon, could not defeat Nixon's claim for the money which he, Bright, got from Nixon upon the strength of the mortgage security.

I say, "if" it were to be decreed that the transaction be declared to be fraudulent, because the cross-bill is not in and Bright is not represented before the court by any solicitor, and therefore no decree can be made against him. If Bright's misrepresentations, for such on this record they appear to be, are sufficient in law to rescind the transaction and restore the status in behalf of Haslett, the question can be tried on an application for the surplus money, if any be raised by the sale of the mortgaged premises or by other appropriate action.

There will be a final decree of foreclosure in favor of the complainant against the defendants, with costs.

# CASES

ADJUDGED IN

# THE PREROGATIVE COURT

OF

# THE STATE OF NEW JERSEY.

## MAY TERM, 1908.